UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARK RYAN,

                    Plaintiff,

        V.

BALLARD MARINE, LLC,
BALLARD MARINE CONSTRUCTION, LLC,
TAPPAN ZEE CONSTRUCTORS, LLC,
RESOLVE MARINE SERVICES, INC., and
RESOLVE MARINE GROUP, INC.,

                    Defendants.

---

7:20-CV-01889 (NSR)

OPINION & ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/19/2025_____

NELSON S. ROMÁN, United States District Judge:

Plaintiff Mark Ryan (the "Plaintiff") brings this action under the common law, the Longshore and Harbor Workers' Compensation Act (the "LHWCA"), and the New York Labor Law ("NYLL") against Ballard Marine, LLC, Ballard Marine Construction, LLC, Tappan Zee Constructors, LLC, Resolve Marine Services, Inc., and Resolve Marine Group, Inc. (collectively, the "Defendants"). Plaintiff claims that Defendants (1) furnished him with an unseaworthy vessel; (2) committed acts of negligence; (3) owe him compensation under the LHWCA; and (4) violated various sections of the NYLL.

Presently before the Court is Defendant Tappan Zee Constructors LLC (hereinafter "TZC"), Defendant Resolve Marine Services, Inc., and Defendant Resolves Marine Group Inc.'s (hereinafter "Resolve") motion for summary judgment (the "Motion"). TZC and Resolve both move for summary judgment on Plaintiff's claims of unseaworthiness, negligence, LHWCA, and NYLL violations. Resolve and TZC also both move for cross-claims against each other for indemnity. For the following reasons, the Court GRANTS Defendant Tappan Zee Constructors LLC motion for summary judgment in part and DENIES Defendant Tappan Zee Constructors LLC

motion for summary judgment in part. The Court GRANTS Defendant Resolve's motion for summary judgment in full.

## BACKGROUND

This dispute arises out of a construction accident related to demolition of the Tappan Zee Bridge. Defendants were contracted to assist with demolition of a portion of the Tappan Zee Bridge called the East Anchor Span ("EAS"). TZC acted as the general contractor on the project and the other Defendants were subcontractors. Plaintiff was an employee of Ballard Marine LLC (hereinafter "Ballard") which was contracted to provide commercial diving services related to the EAS. Resolve was also contracted by TZC to perform salvage services on the EAS.

Resolve created the demolition plan for the EAS where the structure would be toppled into the Hudson River using explosives and then removed from the Hudson using a submersible barge. Prior to the demolition, Resolve laid out several chains between two barges that were located on either side of the EAS. When the EAS fell, it was cradled and left suspended in a "chain basket" created by the chains that were strung from either barge. The chains were then tightened to partially lift the EAS out of the water so that commercial divers could then dive below the surface and sheer off hanging debris to allow the remaining structure to be hauled away safely. Plaintiff was one of those divers contracted to perform sheering work.

On May 20, 2019, Plaintiff was performing sheering work while diving next to the EAS. Plaintiff cut a lateral beam from the EAS and then placed his hand on the spot of the cut to confirm its removal. Plaintiff's hand was caught on a pinchpoint between the EAS and the barge, which severed several of his fingers. The barges were owned by TZC but manned by employees of Ballard at the time of the accident. The barge was outfitted with BlueView Sonar that was owned by TZC but made available to Ballard upon request.

## PROCEDURAL HISTORY

Plaintiff filed this action on March 3, 2020 alleging violations of the common law, the LHWCA, and the NYLL. (ECF No. 1.) Pursuant to the Court's order on October 4, 2022 (ECF No. 78), a full round of summary judgment briefing was filed on October 7, 2022. (ECF Nos. 79-94.) On June 7, 2023, the Court received a status report from the parties that they had reached a settlement agreement. (ECF No. 95.) Following that status report, the Court issued an order rendering the motion for summary judgment moot. (ECF No. 96.) On April 24, 2024, TZC filed another status report informing the Court that the parties had failed to reach a settlement agreement. (ECF No. 100.) On May 6, 2024, the Court issued an order directing the parties to re-file all summary judgment papers on or before May 28, 2024. (ECF No. 101.) On May 24, 2024, Defendant Resolve re-filed their summary judgment papers. (ECF Nos. 102-105.) No other party filed motion papers per the Court's May 6, 2024 order. On February 25, 2025, the Court notified the parties that the Court was in receipt of Resolve's motion papers, but that no other party had re-filed their papers as previously directed. In its correspondence with the parties, the Court provided one last opportunity to re-file any motion papers that were to be considered and informed the parties that they had until February 27, 2025 to do so. On February 27, 2025, TZC re-filed their motion papers for summary judgment. As of the date of this opinion Plaintiff has not filed any opposition to TZC or Resolve.

## LEGAL STANDARDS

Under Federal Rule of Civil Procedure 56(c), summary judgment must be granted if "there is no genuine issue of material fact and ... the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 n. 4 (1986). "[G]enuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, [while]

materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 5 (2d Cir. 1999) (internal quotations and citations omitted). In order to prove that a genuine issue of material fact exists, a plaintiff "may not rest upon the mere allegations or denials of the pleading[s]," but must by affidavit or otherwise "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "Conclusory statements, conjecture or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).

Courts must resolve all ambiguities and draw all reasonable factual inferences in favor of the non-moving party. *See Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). The moving party bears the initial burden of demonstrating an absence of genuine issues of material fact. *See Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997). If the initial burden is met, the non-moving party "must produce specific facts indicating that a genuine issue of fact exists. If the evidence [presented by the non-moving party] is merely colorable, or is not significantly probative, summary judgment may be granted." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (internal quotations and citations omitted) (alteration in original). When a motion is unopposed, as here, summary judgment may still be entered against a party, if appropriate. *See* Rule 56(e); *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988).

## DISCUSSION

### Unseaworthiness

Plaintiff brings a claim of unseaworthiness against both TZC and Resolve. An owner of a vessel is strictly liable for an injury suffered by a seaman as the result of the unseaworthiness of the vessel. *See Reed v. S.S. Yaka*, 373 U.S. 410 (1963). A vessel is unseaworthy if the vessel,

crew and appurtenances are not "reasonably fit for their intended use." *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 550 (1960). "The standard is not perfection, but reasonable fitness; not a ship that will weather every conceivable storm or withstand every imaginable peril of the sea, but a vessel reasonably suitable for her intended service." *Id*. Such a claim can only be asserted against an owner of a vessel or the owner *pro hac vice*. *See Reed,* 373 U.S. 410. An owner will not be liable if there is proof that they "completely and exclusively relinquish[ed] possession, command, and navigation" of the vessel to an owner *pro hac vice*. *Guzman v. Pichirilo*, 369 U.S. 698, 699 (1962). "If the owner is responsible for keeping the vessel in good condition or if it supplies the crew, it is extremely unlikely that the owner has ceded control." *Panzarella v. H&L Towing, Inc.*, No. 15 CIV. 2118 (BMC), 2016 WL 614689, at *2 (E.D.N.Y. Feb. 16, 2016) (citing *Fitzgerald v. A.L. Burbank & Co*., 451 F.2d 670, 676 (2d Cir. 1971). The burden of displacing ownership from the actual owner to the owner *pro hac vice* is a heavy one that requires the owner to establish sufficient facts to the judge or jury. *See Fitzgerald*, 451 F.2d at 676.

Here, Plaintiff claims that he was furnished with a vessel that was not fit for its intended purpose, that the vessel lacked requisite safety equipment, that the supervisors and assisting crew and co-employees were not sufficient nor equal in competence to the ordinary worker, as well as various other defects and faults. With respect to Resolve, they were neither the owner nor owner *pro hac vice* and there is no evidence before the Court that they had any involvement with the vessel at issue. The vessel was owned by TZC and manned by employees of Ballard. There is not enough of a developed factual record for the Court to evaluate whether TZC has met the heavy burden of establishing that Ballard was the *pro hac vice*. Further, the BlueView Sonar was owned by TZC, which makes such a finding extremely unlikely. That said, the record before the

Court does not demonstrate any unseaworthiness of the vessel or the crew. Moreover, in the record before the Court, as well as in the facts laid out in the Complaint, there is no mention or allegation of how the vessel itself was in any way causal to Plaintiff's injury. As the Court understands it, and as the Plaintiff put it in his deposition, the injury was caused by the failure of Ballard's supervisor to pull Plaintiff from the river once the current strengthened. (Resolve Ex. 10, 229:13-25.) But this lapse by the supervisor, if taken as true, would not be sufficient to establish that the crew was not fit for its intended use of commercial diving. *See Marasa v. Atl. Sounding Co., Inc.*, 557 F. App'x 14, 18 (2d Cir. 2014) (holding that the unseaworthiness of the crew occurs where injured crewmembers are not trained for the specific task at issue and are, therefore, not trained to perform it safely). There is no such evidence before the Court that allows it to make that finding. Though the question of unseaworthiness is typically a question for the jury, there does not appear to be any connection between the seaworthiness of the vessel and Plaintiff's injury. *See Mahnich v. Southern S.S. Co.*, 321 U.S. 96, 98 (1944) (holding that unseaworthiness is generally a finding of fact). Accordingly, because Resolve had no connection to the vessel and because there is no evidence that the vessel was in any way causal to the alleged injury, Plaintiff has failed to establish a claim of unseaworthiness against TZC or Resolve.

**<u>Negligence</u>**

Plaintiff also bring claims of negligence against TZC and Resolve. Negligence is governed by the federal maritime law and generally track common law negligence principles. *See Becker v. Poling Transp. Corp.*, 356 F.3d 381, 388 (2d Cir. 2004). Plaintiff must establish: "(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3)

injury to the plaintiff as a result thereof." *In re Bridge Constr. Servs. of Fla.*, 185 F. Supp. 3d 459, 471 (S.D.N.Y. 2016).

Here, there has been no showing of a breach by either TZC or Resolve that was causal in Plaintiff's injury. Again, Resolve had no involvement with the vessel or with Plaintiff's duties on the day of the injury. As mentioned *supra*, TZC furnished the vessel but there was no evidence that the vessel was causal in the injury in any way. Moreover, Plaintiff alleges, *inter alia*, that TZC and Resolve failed to provide a safe workplace and to demolish the EAS in a safe manner. But as the Plaintiff characterizes it in his own deposition, there was no failure on the part of either TZC or Resolve but on Ballard. Plaintiff testified that the failure was on Ballard's supervisor who should have pulled him from the water when the current picked up and that Resolve did their job competently and never took shortcuts. (Resolve 56.1 ¶ 21.) Plaintiff further testified that all direction and supervision came from Ballard and not from TZC. (TZC 56.1 ¶ 15.) There is no evidence before the Court that TZC or Resolve was negligent in any way. Accordingly, Plaintiff has failed to establish a claim of negligence against either TZC or Resolve.

**<u>Longshoreman and Harbor Workers' Compensation Act</u>**

Plaintiff also brings a claim under the LHWCA against TZC and Resolve. The LHWCA is a workers' compensation system that provides covered employees compensation for injuries regardless of fault. *See Howlett v. Birkdale Shipping Co.*, 512 U.S. 92, 96 (1994). Eligible employees include "any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor-worker including a ship repairman, shipbuilder, and ship-breaker...." 33 U.S.C. § 902(3). The Supreme Court has laid out established duties of care owed by vessel owners to employees, contractors, and other non-

longshoring harbor workers. *See Scindia Steam Navigation Co. v. De Los Santos,* 451 U.S. 156 (1981). These include:

1. *The Turnover Duty.* First, before turning over the ship or any portion of it to the stevedore or other contractor employing non-longshoring harbor workers, the vessel owner must exercise ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety. This turnover duty also imposes on vessel owners (and others falling within the statutory definition of "vessel") a duty to warn stevedores or other contractors of hazards of which the "vessels" know or should know and which are unknown or would not be obvious to the stevedore.

2. *The Active Control Duty.* Second, once stevedoring operations or other operations by a contractor have begun, the vessel owner and others falling within the statutory definition of "vessel" will be liable if it actively involves itself in those operations and negligently injures a longshoreman or other harbor worker, or if the owner acts negligently with respect to hazards in areas, or from equipment, under the active control of the vessel during the stevedoring or contractor's operation.

3. *The Duty to Intervene.* Third, with respect to obvious dangers in areas under the principal control of the stevedore, the vessel owner and others falling within the statutory definition of vessel must intervene if it acquires actual knowledge that (1) a condition of the vessel or its equipment poses an unreasonable risk of harm and (2) the stevedore [or other contractor] is not exercising reasonable care to protect its employees from that risk.

*O'Hara v. Weeks Marine, Inc.*, 294 F.3d 55, 64-65 (2d Cir. 2002) (cleaned up).

Here, the Court need not determine if Plaintiff was a covered employee or not as a commercial diver. As mentioned *supra*, there is no evidence in the record of either TZC or Resolve negligently turning over to Plaintiff a vessel of poor condition. There is no evidence of TZC or Resolve involving itself in the operations that led to Plaintiff's injuries. Finally, there is also no evidence of TZC or Resolve having had any notice of any dangers such that they had an obligation to intervene to protect Plaintiff and that they failed to do so. Accordingly, Plaintiff has failed to establish a claim under the LHWCA against either TZC or Resolve.

## NYLL Claims

### New York Labor Law § 200

New York Labor Law § 200 codifies the common law duty for landowners to provide workers with a safe place to work. *See Lombardi v. Stout*, 80 N.Y.2d 290, 294-95 (1992). There are two types of NYLL § 200 claims: (1) manner claims or (2) premises claims. *See Wallace v. Nat'l R.R. Passenger Corp.*, 5 F. Supp. 3d 452, 466-67 (S.D.N.Y. Mar. 18, 2014) (collecting cases). A manners claim is "[w]hen an 'alleged defect or dangerous condition arises from [a] contractor's methods and the owner exercises no supervisory control over the operation, no liability attaches to the owner under the common law or under Labor Law § 200.'" *Cook v. Orchard Park Estates, Inc.*, 73 A.D.3d 1263, 1265 (N.Y. App. Div. 3d Dep't 2010) (quoting *Comes v. New York State Elec. & Gas Corp.*, 82 N.Y.2d 876, 877 (1993)). "[A]n owner or general contractor's retention of general supervisory control, presence at the worksite or authority to enforce general safety standards is insufficient to establish the necessary control. *Sainato v. City of Albany*, 285 A.D.2d 708, 709, (N.Y. App. Div. 3d Dep't 2001). General supervision such as providing mere general instructions of what needs to be done is insufficient

to establish control for purposes of liability. *See Mitchell v. NRG Energy, Inc.*, 125 A.D.3d 1542, 1543-44 (N.Y. App. Div. 4th Dep't 2015). A premises claim is "[w]here a plaintiff's injuries stem from a *dangerous condition on the premises*, a defendant may be liable if it had control over the work site and either created the dangerous condition or had actual or constructive notice of it." *Dwyer v. Goldman Sachs Headquarters*, LLC, 819 F. Supp. 2d 320, 329 (S.D.N.Y. 2011) (emphasis added). But when the injury is a result of the subcontractor's own negligence or defect, no liability attaches to the contractor. *See Friebely v. C.D. Perry & Sons, Inc.*, 624 F. Supp. 3d 160, 193-94 (N.D.N.Y. 2022) (collecting cases).

Here, there is no evidence before the Court that TZC or Resolve exercised sufficient control over the operations that led to Plaintiff's injuries for liability to attach. Moreover, there is no evidence that either Defendant had actual or constructive notice of the dangerous conditions—either from the manner and method of the operation or from a dangerous condition of the premises. And as mentioned, Plaintiff's claim of negligence is really focused at Ballard and the supervisor on the day of the accident. No liability can attach to a contractor for the negligence of a subcontractor under this provision of the NYLL. *Id*. Accordingly, Plaintiff has failed to establish a claim under NYLL § 200.

### New York Labor Law § 240(1)

NYLL § 240(1), also known as the "scaffolding law" imposes absolute liability in order to place the ultimate responsibility of safety practices at building construction jobs on the owners and general contractors. *See Blake v. Neighborhood Hous. Servs. of New York City, Inc.*, 1 N.Y.3d 280, 186 (2003). The concern of the legislature in enacting this statue was the extreme risks that construction workers who worked at elevated heights faced and the widespread accounts of deaths and injuries at work sites. *Id*. at 284-85. The New York Court of Appeals has made clear that this statute is to be construed liberally to maximize protection to workers. *Id*.

(citing *Quigley v. Thatcher*, 207 N.Y. 66, 68 (1912)). That said, this statute's reach is not totally sweeping. The Court of Appeals has also held that the statute's scope is limited to hazards related to the effects of gravity—either (1) where work is being performed at an elevated level or (2) where materials are being hoisted overhead while workers work at a lower elevation level. *See Rocovich v. Consol. Edison Co.*, 78 N.Y.2d 509, 514 (1991). The core premise of this statute is that a defendant's failure to provide workers with adequate protection from reasonably preventable, gravity-related accidents will result in liability. *See Wilinski v. 334 E. 92nd Hous. Dev. Fund Corp.*, 18 N.Y.3d 1, 7-8 (2011). Following the line of precedent under NYLL § 240(1) cases, the claims generally fall into two buckets: (1) falling worker claims or (2) falling objects claims. *See Narducci v. Manhasset Bay Assoc.*, 96 N.Y.2d 259 (2001).

Here, Plaintiff was injured from a pinchpoint caused by increased current which caused the EAS structure to shift and ensnare Plaintiff's hand. Though the current is driven by wind and gravity, and the EAS structure was suspended and hoisted by chains, this accident is not the sort of accident contemplated by NYLL § 240(1). The line of cases explaining the core focus of this statute makes clear that its scope is limited to elevation-related accidents due to the heightened risks associated with this work. Moreover, and as mentioned throughout this opinion, Plaintiff's claim is focused squarely on Ballard's failure to pull him from the water once the current picked up and not from a failure to use, or properly use, one of the safety devices enumerated in NYLL § 240(1).[1] And "the absence of a causal nexus between the worker's injury and a lack or failure of a device prescribed by section 240(1) mandate[s] a finding against liability." *Wilinski*, 18 N.Y.3d at 9. Because there has been no failure on the part of TZC or Resolve to place or provide

---

[1] NYLL § 240(1) lists scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, amongst others, to be placed and operated as to give proper protection to a person so employed.

any safety devices that would have prevented Plaintiff's injuries, Plaintiff has failed to establish a claim under NYLL § 240(1).

### New York Labor Law § 241(6)

New York Labor Law § 241(6) "requires owners and contractors to provide reasonable and adequate protection and safety for workers and to comply with the specific safety rules and regulations promulgated by the Commissioner of the Department of Labor." *Ross v. Curtis-Palmer Hydro-Electric., Co.*, 81 N.Y.2d 494, 501 (1993). To properly bring a claim under this statute, a Plaintiff must allege a specific violation of the Department of Labor Code. *Id.* "It is well established that, in a Labor Law § 241(6) claim, the rule or regulation alleged to have been breached must be a specific, positive command." *Gasques v. State of N.Y.*, 15 N.Y.3d 869, 870 (2010) (internal quotations and citation omitted). "Once it has been alleged that a concrete specification of the Code has been violated, it is for the jury to determine whether the negligence of some party to, or participant in, the construction project caused plaintiff's injury." *Ross,* 81 N.Y.2d at 618.

Here, Plaintiff has alleged violations of 12 N.Y.C.R.R. But Plaintiff has failed to point the Court to a specific provision and instead only provides a general cite to the Code. Plaintiff also generally avers of "breaches of various OSHA regulations, other statues, rules and regulations violations." This is nowhere near specific enough of a command to serve as a predicate for purposes of a NYLL § 241(6) claim. *See Friebely v. C.D. Perry & Sons, Inc*., 624 F. Supp. 3d 160, 194-95 (N.D.N.Y. 2022) (holding that even a specific citation to the code will not be sufficient to serve as a predicate offense when the provision does not prescribe a specific standard of conduct). Accordingly, Plaintiff has failed to establish a claim under NYLL § 241(6).

12

**Indemnity**

TZC and Resolve also bring cross-claims for indemnity against one another. TZC claims that Section 28.1 and Section 28.2 of the contract between TZC and Ballard control and that, as a result, Ballard and Resolve's cross-claim should be dismissed. Those provisions read:

**28.1** [Ballard]  agrees to defend, indemnify and hold harmless [TZC] and its constituent members, Owner, the State of New York […] from and against any claim, demand, cause of action, liability loss or expense arising […] from injury to or death of persons (including employees of [TZC], Owner, [Ballard] and [Ballard's] subcontractors) or damage to or loss of property (including the property of [TZC] or Owner) arising directly or indirectly out of this Contract or out of any acts or omissions of [Ballard], its subcontractors, or suppliers. (emphasis added).

**28.2** To the fullest extent provided by law, the [Ballard] agrees that its obligations to indemnify, defend and hold harmless [TZC] and its constituent members, as well as all Indemnitees listed above, shall extend and apply to any and all claims, suits, damages, liabilities, professional fees, including attorneys' fees, costs, court costs, expenses and disbursements arising out of or related to an act or omission to act of the [Ballard], including claims for death, personal injuries […] brought or assumed against any of the Indemnitees by any person or entity, arising out of or in connection with or as a result or consequence of the performance of the Work of the [Ballard], as well as any additional work, extra work or add-on work, whether or not caused in whole or in part by the contractor or any person or entity employed, either directly or indirectly by the Contractor[.] [TZC] and [Ballard] expressly agree that this indemnification agreement

13

> contemplates (1) full indemnity in the event of liability imposed against Indemnitees without negligence and (2) partial indemnity in the event of any actual negligence on the part of the Indemnitees either causing or contributing to the underlying claim which negligence is expressly excepted from the [Ballard's] obligation to indemnify.

On the other side of the cross-claim, Resolve argues that its contract with TZC controls. Resolve argues that Section 28.2.2 and Section 28.2.3 of its contract, when read together, provide the proper scope of Resolve's coverage under indemnity contract. Section 28.2.2 and 28.2.3 reads:

> **28.2.2** [TZC] agrees to defend, indemnify and hold harmless [Resolve] and its Affiliates, and its and their respective directors, officers, managers, employees, subcontractors, agents, consultants and representatives (hereinafter collectively the 'Contractor Group Indemnitees' and each a 'Contractor Group indemnitee'), from and against any and all Losses arising:

> **28.2.3** From injury to or death of persons, or from damage to or loss of property, arising directly or indirectly out of any acts or omissions of [TZC] or its subcontractors (other than any Contractor Group Indemnitee) in the performance of this Contract, but only to the extent of [TZC's] or its subcontractor's (other than any Contractor Group Indemnitee's) negligence, if any.

Resolve reads this to mean that Section 28.2.2 and 28.2.3 covers TZC only to the extent of TZC's negligence or the negligence of its subcontractor's. Resolve further argues that Section 28.4 provides the proper scope of Resolve's coverage, which reads:

> **Section 28.4** Notwithstanding the indemnity obligations of [Resolve] under Section 28.1, to the fullest extent permitted by law, [TZC] agrees to release, defend, indemnify and

> hold harmless each Contractor Group Indemnitee from and against any and all Losses arising out of the bodily injury or death, or property damage or loss, of any [TZC] Group Indemnitee arising out of, related to or in connection with this Contract, except to the extent caused by the negligence of any Contractor Group Indemnitee.

Resolve has the better of the argument. Resolve's contract provides broad indemnity coverage by TZC. Moreover, Resolve's contract with TZC was signed after TZC's contract with Ballard. "Generally, under New York law, 'a subsequent contract regarding the same subject matter supersedes the prior contract.'" *CreditSights, Inc. v. Ciasullo*, No. 05 Civ. 9345, 2007 WL 943352, at *6 (S.D.N.Y. Mar. 29, 2007*) (*quoting *Indep. Energy Corp. v. Trigen Energy Corp.,* 944 F.Supp. 1184, 1195-96 (S.D.N.Y.1996)). Resolve is, therefore, covered by its contract with TZC, which provides for broader indemnity. Accordingly, Resolve is indemnified by TZC.

**CONCLUSION**

For the above reasons, the Court GRANTS Tappan Zee Constructors, LLC's ("TZC") motion for summary judgment in part and DENIES TZC's motion for summary judgment in part. The Court grants TZC's motion for summary judgment on Plaintiff's claims of unseaworthiness, negligence, the Longshore and Harbor Workers' Compensation Act ("LHWCA"), and its New York Labor Law ("NYLL") claims. The Court denies TZC's cross-claim for indemnification against Resolve. TZC's cross-claim against Plaintiff remains. The Court GRANTS Defendant Resolve Marine Services, Inc. and Defendant Resolves Marine Group Inc.'s (hereinafter "Resolve") motion for summary judgment in full. The Court grants Resolve's motion for summary judgment on Plaintiff's claims of unseaworthiness, negligence, the LHWCA, and its NYLL labor law claims. The Court also grants Resolve's cross-claim for indemnification. The Clerk of Court is directed to terminate the motions at ECF Nos. 102 and 107 and to terminate TZC and the Resolve Defendants. Plaintiff's claims of unseaworthiness, negligence, the LHWCA, and various section of the NYLL against Ballard Marine, LLC and Ballard Marine Construction, LLC remain. Ballard Marine, LLC and Ballard Marine Construction, LLC's cross-claims against Resolve Marine Group, Inc., Resolve Marine Services, Inc., Tappan Zee Constructors, LLC remain.

A Pretrial Teleconference for the remaining parties is scheduled for May 1, 2025 at 11:00 am. To access the Webex Teleconference, please follow these directions: (1) Dial the Meeting Number: 855-244-8681; (2) Enter the Access Code: 2310 494 3855; and (3) press pound (#) to enter the teleconference.

SO ORDERED.

Dated:    March 19, 2025
          White Plains, New York

_____
          NELSON S. ROMÁN
          United States District Judge

17